**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CARMEN FLORES CASTRO,<br>*Petitioner-Appellant*,<br><br>v.<br><br>BERTHA HERNANDEZ RENTERIA,<br>*Respondent-Appellee.* | No. 19-16048<br><br>D.C. No.<br>2:18-cv-01739-<br>GMN-CWH<br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, District Judge, Presiding

Argued and Submitted July 7, 2020
Seattle, Washington

Filed August 19, 2020

Before: MICHAEL DALY HAWKINS, D. MICHAEL
FISHER,[*] And MILAN D. SMITH, JR., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable D. Michael Fisher, United States Chief Circuit Judge for the U.S. Circuit Court of Appeals for the Third Circuit, sitting by designation.

**SUMMARY**[**]

**Hague Convention**

The panel affirmed the district court's denial of a petition for the return of a child to Mexico pursuant to the Hague Convention on the Civil Aspects of International Child Abduction.

Petitioner, the child's paternal half-sister, alleged that the child's maternal grandmother either wrongfully removed her from Mexico or wrongfully retained her in the United States. The panel concluded that the date of wrongful removal or retention was more than one year prior to the date of the petition, which was filed on September 7, 2018. The panel held that the district court clearly erred in its factual finding regarding the date of removal, which was August 25, 2017. The panel further held that the grandmother's removal of the child was wrongful because it was in breach of a Mexican court's rights of custody. The panel gave great weight to the Mexican court's own rulings regarding the wrongfulness of the removal, and it concluded that neither the petitioner nor the Mexican court gave affirmative prior consent to the child's removal from Mexico.

Because the date of wrongful removal was more than one year prior to the date of the petition, the return of the child was not mandatory, and the district court had discretion whether to order her return to Mexico. The panel affirmed the district court's discretionary decision not to order the

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

return of the child pending custody proceedings because she was now settled in Las Vegas, Nevada.

## COUNSEL

Vincent Mayo (argued), The Abrams & Mayo Law Firm, Las Vegas, Nevada, for Petitioner-Appellant.

Richard C. Gordon (argued), Kelly H. Dove, Eric D. Walther, and Evan Hall, Snell & Wilmer LLP, Las Vegas, Nevada, for Respondent-Appellee.

## OPINION

M. SMITH, Circuit Judge:

Carmen Flores Castro appeals the district court's denial of her petition for the return to Mexico of Z.F.M.Z., a now ten-year-old child who is Carmen's paternal half-sister, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the Hague Convention or Convention). Bertha Hernandez Renteria, Z.F.M.Z.'s maternal grandmother, who has been raising Z.F.M.Z. in Las Vegas, Nevada since 2017, opposes the petition.

The parties' dispute concerns the precise date on which Bertha either wrongfully removed or wrongfully retained Z.F.M.Z. within the meaning of the Convention, which dictates whether Carmen's petition was timely filed. We conclude that the date of wrongful removal or retention was more than one year prior to the date of Carmen's petition. Accordingly, we affirm the district court's discretionary decision not to order the return of Z.F.M.Z. to Mexico

pending custody proceedings, because Z.F.M.Z. is now settled in Las Vegas.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

Z.F.M.Z. was born in Las Vegas in 2009, the daughter of Rusia Michel Zamora and Raul Flores Hernandez. Rusia and Raul thereafter moved to Mexico, where they lived separately. Z.F.M.Z. lived primarily with Rusia and Bertha. In 2014, Rusia disappeared under unknown circumstances. Raul was in prison at the time, and Bertha became Z.F.M.Z.'s primary caregiver. Upon Raul's release in 2016, Bertha and Raul agreed to an informal arrangement pursuant to which Bertha would have custody of Z.F.M.Z. on weekdays, and Raul on weekends.

In May of 2017, Raul and Carmen initiated custody proceedings against Bertha in family court in Jalisco, Mexico. The court granted Raul full custody during the pendency of the proceedings. Z.F.M.Z. then resided partly with Raul and partly with Carmen. That arrangement ended when Raul was arrested in Mexico on allegations of drug trafficking by the U.S. Office of Foreign Assets Control. After his arrest, Raul allegedly gave Carmen informal custody of Z.F.M.Z.

Subsequent to Raul's arrest, with custody proceedings ongoing, Bertha obtained provisional custody of Z.F.M.Z. from the Jalisco court for the purpose of taking Z.F.M.Z. to be interviewed by a psychologist. The provisional custody period was originally one week, from August 11 through 18, 2017. On August 18, the court granted Bertha an extension through September 8. On August 25, Bertha left Mexico with Z.F.M.Z. on a flight from Guadalajara to Las Vegas.

On August 30, Carmen reported to the Jalisco court that Bertha had taken Z.F.M.Z. out of Mexico.  The Jalisco court issued an order the same day that set the custody hearing for September 8; ordered Bertha to appear along with Z.F.M.Z. at the hearing; acknowledged that Bertha had "left the country with [Z.F.M.Z.]"; set a bond on Bertha's appearance; and directed personal notice to Bertha "that she may not leave the territory of this court . . . or the country, accompanied by the mentioned minor, without leaving a duly authorized representative to take part in this trial."

Neither Bertha nor Z.F.M.Z. appeared at the September 8 hearing.  On September 13, the court received a letter from Bertha stating that she would be staying in the United States indefinitely with Z.F.M.Z.

On October 2, the court issued an order directing communication to the Mexican Ministry of Foreign Affairs and the U.S. Consulate General in Guadalajara, to inform them "that [Z.F.M.Z.] was illegally taken out of the country against all the judicial orders."  On October 12, the Jalisco court issued a further order stating that Bertha "did not comply with the secure order decreed in the resolution of August 30th, 2017, and left out of the territory with [Z.F.M.Z.]."  The order directed the Jalisco District Attorney to notify Bertha of her noncompliance by virtue of "taking [Z.F.M.Z.] out of the country without authorization."  The order additionally directed that the relevant diplomatic offices be informed "about the illegal subtraction of [Z.F.M.Z.] out of the country."

On September 7, 2018, Carmen filed her Hague Convention petition with the district court, requesting Z.F.M.Z.'s return to Mexico.

**II.**

The case was initially considered by Magistrate Judge Hoffman, who heard testimony at an evidentiary hearing on November 9, 2018. In addition to the facts recounted above, testimony and evidence presented at the hearing established that Bertha had enrolled Z.F.M.Z. in a Las Vegas elementary school on August 31, 2017. Z.F.M.Z. quickly learned English and made three good friends at school. Z.F.M.Z.'s teacher testified that Z.F.M.Z. has improved greatly in school since she started, even receiving awards for her reading ability. Z.F.M.Z. regularly sees her extended family members who also live in Las Vegas, including a same-age cousin with whom she has a "sister-like relationship."

Z.F.M.Z. testified that she likes living with Bertha and would prefer to remain in Las Vegas with Bertha. The parties' stipulated expert in child psychiatry, Dr. Roitman, testified that Z.F.M.Z.'s maturity level is such that it would be appropriate to consider her wishes. Dr. Roitman testified that Z.F.M.Z. is "strongly attached to her grandmother" and views Bertha as her primary caregiver, like a mother. He testified that the two traumas Z.F.M.Z. has experienced in her life were the disappearance of her mother, Rusia, and the three-month separation from Bertha when Z.F.M.Z. was living with Raul and Carmen in 2017. He testified that Z.F.M.Z. "lives in constant fear that the separation [from Bertha] may occur again," and "experiences nightmares when she anticipates visits with [Carmen]."

The magistrate recommended granting Carmen's petition pursuant to the mandatory return provision of Article 12 of the Convention. The magistrate found that Carmen had rights of custody and was exercising those rights during the relevant time period, pursuant to the Jalisco court's award of custody to Raul, and Raul's informal

passing of custody to Carmen upon his arrest. The magistrate found that Bertha, however, had "provisional custody" at the time she removed Z.F.M.Z. from Mexico. The magistrate determined that September 8, 2017, when Bertha failed to appear at the Jalisco court hearing with Z.F.M.Z., "was the earliest unequivocal act when [Carmen] should have known that [Bertha] had wrongfully retained [Z.F.M.Z.]."[1] On this basis, the magistrate concluded that the date of wrongful retention was September 8, 2017, and that Carmen's September 7, 2018 petition was therefore timely filed.

Notwithstanding its threshold conclusion that Carmen's petition was timely filed, the magistrate also made findings concerning whether Z.F.M.Z. "is now settled in [her] new environment," which is a defense that may apply to untimely petitions. Hague Conv. Art. 12. The magistrate found that, "[a]lthough she has only been in Las Vegas for a little over a year, [Z.F.M.Z.] has established significant connections to Las Vegas, as she has developed friends, attends school regularly, and has family that resides in the area." Finding that neither immigration status nor financial status weighed toward a contrary conclusion, the magistrate thus concluded that Z.F.M.Z. is now "settled" with Bertha in Las Vegas.

## III.

The district court rejected the magistrate's recommendation regarding the timeliness of Carmen's petition, and ultimately denied the petition. Reviewing the facts *de novo*, the court found that Bertha "had no right to

---

[1] In the alternative, the magistrate concluded that Bertha's "intent to remain in Las Vegas was unequivocally clear upon receipt of her letter on September 13, 2017."

take Z.F.M.Z. to the United States," and that this matter was therefore "one of wrongful removal" rather than wrongful retention. In support of this conclusion, the court made four findings: (1) Carmen notified the Jalisco court on August 30, 2017, that Bertha "wrongfully left" Mexico with Z.F.M.Z.; (2) the Jalisco court's August 30 order imposed travel restrictions "preventing [Bertha] from leaving Mexico with Z.F.M.Z. during the pendency of custody proceedings"; (3) Carmen "never acquiesced or consented to the relocation of Z.F.M.Z. in the United States"; and (4) Bertha's provisional award of custody from August 11 to September 8 did not grant her the right to leave Mexico to obtain the psychological report. On this basis, the court concluded that wrongful removal occurred on August 30, 2017,[2] and that Carmen's September 7, 2018 petition was therefore filed more than one year after the operative date.

The court noted that the magistrate's now-settled findings were based "on a thorough analysis of testimony from Z.F.M.Z., Z.F.M.Z.'s cousin, and Z.F.M.Z.'s teacher in Las Vegas." As no party had objected to these findings, the court accepted them without further examination.

The court then declined to exercise its discretion to nevertheless order return. *See In re B. Del C.S.B.*, 559 F.3d 999, 1015–16 (9th Cir. 2009). The court highlighted the magistrate's uncontested findings on the now-settled defense, including that Z.F.M.Z. had made "significant improvement in English," achieved "several school awards," made "three best-friends" in her new environment, and has

---

[2] The district court noted that Bertha "states that she actually left Mexico with Z.F.M.Z. on August 25, 2017," but used the August 30 date based on language in the Jalisco court's October orders indicating that Bertha and Z.F.M.Z. "left" Mexico on August 30.

family in the United States that "supports her academic and recreational interests." The court found that Bertha did not attempt to conceal Z.F.M.Z. after her entry into the United States, but rather informed the Jalisco court of Z.F.M.Z.'s relocation to Las Vegas shortly after her arrival. *See id.* The court also found that Carmen is capable of litigating custody issues here in the United States, whereas Bertha would likely be unable to litigate custody in Mexico due to her outstanding arrest warrant for abducting Z.F.M.Z. *See Fernandez v. Bailey*, 909 F.3d 353, 364–65 (11th Cir. 2018). In addition, the court found that Bertha's "inability to be present for proceedings in Mexico would likely create extensive distress to Z.F.M.Z. were she to be returned without [Bertha]." On the other hand, the court expressed concern for Bertha's lack of respect for court orders, as indicated by her wrongful removal of Z.F.M.Z. during the Jalisco custody proceedings, and her frustration of a court-imposed visitation schedule during this case. However, the court concluded that "[o]n balance," the facts favored preserving Z.F.M.Z.'s stability in her current environment.

This appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

The Hague Convention is in force between the United States and Mexico. Federal district courts have jurisdiction over actions arising under the Hague Convention pursuant to 22 U.S.C. § 9003. We have jurisdiction to review the district court's decision pursuant to 28 U.S.C. § 1291. We review the district court's factual determinations for clear error, and the district court's application of the Convention to those facts *de novo*. *In re B. Del C.S.B.*, 559 F.3d at 1008.

**ANALYSIS**

**I.**

The Hague Convention generally provides that when a child has been "wrongfully removed or retained" across international borders, the judicial authority of the State "where the child is . . . shall order the return of the child" if an eligible parent or guardian[3] petitions for return within one year. Hague Conv. Art. 12. "[T]he Convention reflects a design to discourage child abduction." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014). The return remedy "lays venue for the ultimate custody determination in the child's country of habitual residence rather than the country to which the child is abducted." *Id.* at 5. However, the Convention does not pursue these goals "at any cost." *Id.* at 16. As relevant here, if the other parent or guardian fails to petition for return within one year, and "it is demonstrated that the child is now settled in its new environment," the

---

[3] We use the term "guardian" herein as shorthand for "a person, an institution or any other body" that "jointly or alone" has "rights of custody" within the meaning of the Convention. Hague Conv. Art. 3(a). We adopt the conclusion of the House of Lords in *In re H* that a court in the child's country of habitual residence may be such a guardian where custody proceedings are pending before it. *In re H (A Minor) (Abduction: Rights of Custody)*, [2000] 2 A.C. 291, 1999 WL 1319095 (appeal taken from Eng.); *see Fawcett v. McRoberts*, 326 F.3d 491, 500 (4th Cir. 2003) (adopting same, noting that "judicial 'opinions of our sister signatories' to the Convention are 'entitled to considerable weight.'" (quoting *Air France v. Saks*, 470 U.S. 392, 404 (1985))), *abrogated on other grounds by Abbott v. Abbott*, 560 U.S. 1 (2010).

judicial authority is not required to order return.**[4]**   Hague Conv. Art. 12.

The one-year period is triggered by the "date of the wrongful removal or retention" of the child.  *Id.*  A removal or retention of a child is "wrongful" if it is "in breach of the rights of custody" attributed to any guardian "under the law of the State in which the child was habitually resident." Hague Conv. Art. 3(a).**[5]**   According to the U.S. State Department:

> Generally speaking, "wrongful removal" refers to the taking of a child from the person who was actually exercising custody of the child. "Wrongful retention" refers to the act of keeping the child without the consent of the person who was actually exercising custody. The archetype of this conduct is the refusal by the noncustodial parent to return a child at the end of an authorized visitation period.

Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,503 (Mar. 26, 1986).

---

**[4]** Other exceptions to return include where the left-behind parent or guardian was not "actually exercising" custody rights, where there is a "grave risk" that return would "place the child in an intolerable situation," or where the child herself is of sufficient "age and . . . maturity" and "objects to being returned."  Hague Conv. Art. 13.

**[5]** Wrongfulness further requires that the left-behind parent or guardian's rights of custody have been "actually exercised" at the time of removal or retention.  Hague Conv. Art. 3(b).

The district court concluded that Bertha wrongfully removed Z.F.M.Z. from Mexico no later than August 30, 2017.  Carmen argues that Bertha's *removal* of Z.F.M.Z. was not wrongful at all, and that Bertha's *retention* of Z.F.M.Z. outside of Mexico did not become wrongful until at least September 8, 2017, when Bertha failed to appear with Z.F.M.Z. at the custody hearing.

## A.

In order to evaluate the relevant context, we first ascertain the date on which Bertha removed Z.F.M.Z. from Mexico.  Bertha alleges that she and Z.F.M.Z. boarded a flight from Guadalajara to Las Vegas on August 25, 2017. The only record evidence that potentially contradicts this account is an order issued by the Jalisco court on October 11, 2017 that states: "[Bertha] did not comply with the secure order decreed in the resolution of August 30th, 2017, and left out of the territory with [Z.F.M.Z.]."  The district court interpreted this October order to have found that Bertha and Z.F.M.Z. "left" Mexico specifically on August 30, 2017.  However, the record contains copies of the August 25 boarding passes for Bertha and Z.F.M.Z., and Carmen has not raised any questions about the authenticity of these copies.  In light of this evidence, we conclude that the district court's finding was clearly erroneous.  We proceed on the understanding that Bertha removed Z.F.M.Z. from Mexico on August 25, 2017.[6]

---

[6] We interpret the Jalisco court's October 11 order as specifying only the date of its own previous decree, and not the date on which Bertha and Z.F.M.Z. actually "left."  To the extent that any of the Jalisco court's orders or writings do suggest that the removal took place specifically on August 30, 2017, we observe that it is unclear whether the Jalisco court

### B.

Carmen argues that Bertha's removal of Z.F.M.Z. was not wrongful because neither Carmen nor the Jalisco court had expressly objected to Bertha leaving Mexico with Z.F.M.Z. during Bertha's period of provisional custody. She contends that the Jalisco court's August 11 and August 18 provisional custody orders did not impose any restriction on travel outside of Mexico. She argues that in the absence of such restriction, Bertha had the right to travel internationally with Z.F.M.Z. during this period. We disagree.

For a removal to be "wrongful," the Convention requires that the removal be in breach of the "rights of custody" of any guardian. The Convention in turn defines "rights of custody" to include "the right to determine the child's place of residence." Art. 5(a). Prior to this appeal, there has been no dispute that both Carmen and the Jalisco court had such "rights of custody" at the time that Bertha removed Z.F.M.Z. from Mexico.[7] There remains no dispute that at least the Jalisco court had the relevant "rights of custody."

---

had the benefit of the boarding passes in evidence here in order to make that determination.

[7] Carmen argues for the first time on appeal that *only* the Jalisco family court had relevant "rights of custody" during Bertha's provisional custody period, and thus that Carmen lacked standing to object (or fail to consent) to Z.F.M.Z.'s removal or retention during that time. Hague Conv. Art. 3(a). "Ordinarily, an appellate court will not hear an issue raised for the first time on appeal." *Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015) (quoting *Cornhusker Cas. Ins. Co. v. Kachman*, 553 F.3d 1187, 1191 (9th Cir. 2009)). Even if an exception might apply here, *see id.*, we need not resolve this issue because it does not affect our judgment. We ultimately conclude that

Accordingly, we must determine whether Bertha's removal of Z.F.M.Z. was "in breach" of either Carmen's or the Jalisco court's rights of custody under Mexican law. Hague Conv. Art. 3(a). Here, the Convention encourages us to "take notice directly . . . of judicial or administrative decisions . . . in the State of the habitual residence of the child." Art. 14. The Convention further permits the judicial authorities of the country of habitual residence to issue "a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention." Art. 15. Accordingly, we give great weight to the Jalisco's court's own rulings concerning the wrongfulness of the removal in this case.

We conclude that the Jalisco court's decisions issued in October 2017 make clear that the removal was in breach of the relevant rights of custody, even if we characterize the removal as mere travel. In its October 2 order, the Jalisco court stated that "the girl was illegally taken out of the country." Similarly, in its October 11 order, the Jalisco court stated that the "taking of [Z.F.M.Z.] out of the country" was "without authorization," and referred to the "illegal subtraction of [Z.F.M.Z.] out of the country." The district court therefore found that the Jalisco court considered Bertha's initial removal of Z.F.M.Z. from Mexico to be wrongful, and we agree. The Jalisco court's statements are inconsistent with the proposition that Bertha had the right, under Mexican law generally or the Jalisco's court's provisional custody orders specifically, to unilaterally "take[]" or "subtract[]" Z.F.M.Z. from Mexico during her

---

neither Carmen nor the Jalisco family court consented to Z.F.M.Z.'s removal.

provisional custody period, regardless of whether Bertha's initial intent was only temporary travel.**[8]**

## C.

This result is reinforced by all of the relevant caselaw cited by either party, which consistently relies on the left-behind parent or guardian's affirmative consent — not the absence of an express objection or court-imposed travel restriction — to render a removal not wrongful.**[9]** In addition,

---

**[8]** To the extent that any of the Jalisco court's later orders or writings indicating that the removal was wrongful might rely on the finding that the removal took place on August 30, *subsequent* to the court's August 30 travel restriction, we note that we would reach the same ultimate result.  Even if the August 25 removal had not been wrongful, we would conclude that Bertha's retention of Z.F.M.Z. became wrongful on August 30, 2017, due to the clear manifestations of objection by both Carmen (complaining to the Jalisco court that Bertha had left the country with Z.F.M.Z.) and the Jalisco court itself (as discussed below).  *See Blackledge v. Blackledge*, 866 F.3d 169, 179 (3d Cir. 2017) ("[T]he [wrongful] retention date is the date beyond which the [left-behind] parent no longer consents[,] . . . as clearly and unequivocally communicated through words, actions, or some combination thereof.").  Our ultimate conclusion regarding the timeliness of Carmen's petition would be the same.

**[9]** *See Garcia v. Pinelo*, 808 F.3d 1158, 1159–60 (7th Cir. 2015) (case was one of wrongful retention because there was affirmative consent to the initial travel); *Darin v. Olivero-Huffman*, 746 F.3d 1, 10 (1st Cir. 2014) (same); *Nixon v. Nixon*, 862 F. Supp. 2d 1168, 1173–74, 1178 (D.N.M. 2011) (same); *Pesin v. Osorio Rodriguez*, 77 F. Supp. 2d 1277, 1285–86 (S.D. Fla. 1999) (same); *see also Blackledge*, 866 F.3d at 179 ("[T]he retention date is the date beyond which the noncustodial parent *no longer consents* to the child's continued habitation with the custodial parent and instead seeks to reassert custody rights." (emphasis added)); *Baxter v. Baxter*, 423 F.3d 363, 371 (3d Cir. 2005) ("If the petitioner *agrees* to a removal under certain conditions or circumstances and contends those conditions have been breached, the court must also

the Convention places the burden on the party opposing the return of the child to prove the affirmative defense that the left-behind parent or guardian "consented to or subsequently acquiesced in the removal or retention."    Art. 13(a); 22 U.S.C. § 9003(e)(2)(B); *see also Baxter v. Baxter*, 423 F.3d 363, 371 (3d Cir. 2005) ("In examining a consent defense, it is important to consider what the petitioner actually contemplated and agreed to in allowing the child to travel outside its home country.").  The corollary here is that we presume the left-behind parent or guardian did not consent, and that their lack of consent renders the removal wrongful.

There is no evidence that either Carmen or the Jalisco court gave affirmative prior consent to Z.F.M.Z.'s removal from Mexico on August 25, 2017.  The district court found,

---

examine any wrongful retention claim." (emphasis added)); *Flores-Aldape v. Kamash*, 202 F. Supp. 3d 793, 801 (N.D. Ohio 2016) (wrongful removal did not occur because father *consented* to child traveling to United States, even if mother misrepresented her motivations); *Kosewski v. Michalowska*, No. 15-CV-928, 2015 WL 5999389, at *20 (E.D.N.Y. Oct. 14, 2015) ("[I]n this case, petitioner, by his own account, never *consented* to M.K.'s removal from Poland and retention in the United States.  Thus, the date of the wrongful removal or retention was August 16, 2013, the date the child arrived in the United States." (emphasis added)); *Guerrero v. Oliveros*, 119 F. Supp. 3d 894, 905 n.3 (N.D. Ill. 2015) ("Technically, because Petitioner *agreed* to allow the Children to temporarily visit the United States, this is a case of wrongful retention rather than wrongful removal." (emphasis added)); *In re C (A Minor)(Abduction)* [1989] 1 FLR 403, 411 (Eng. Ct. App.) ("If anyone, be it an individual or the court or other institution or a body, has a right to object, and either *is not consulted* or refuses consent, the removal will be wrongful within the meaning of the Convention." (emphasis added)).  The underlying assumption in these cases is that it is typically "wrongful" to remove a child across international borders, even if merely for travel, without the prior consent of other parents or guardians who have "rights of custody."  Hague Conv. Art. 3.

per Carmen's admission, that Carmen "never acquiesced or consented to the relocation of Z.F.M.Z. in the United States."[10]   The district court further found that the Jalisco court's provisional custody orders of August 11 and 18, 2017 did not authorize Bertha to take Z.F.M.Z. out of Mexico. Although Carmen contends such permission was implicit, she has pointed to no language in those orders that affirmatively authorizes international travel.  If anything, the Jalisco court's emphasis on "the address of the residence dwelling where [Bertha] will continue the [temporary] custody: . . . in the town of Las Aguilas within the Zapopan Municipality, Jalisco," suggests the contrary.  Further, as discussed above, the Jalisco court later interpreted Bertha's "taking" or "subtraction" of Z.F.M.Z. from Mexico to have been "illegal" and "without authorization," necessarily implying that the Jalisco court did not give prior consent for the taking.  Accordingly, we see no reason to disturb the district court's finding that Bertha "had no right to take Z.F.M.Z. to the United States."

## D.

We address one final counterargument.  Carmen contends that the Jalisco court expressly consented to Bertha's removal and/or retention of Z.F.M.Z. in its August 30, 2017 order.  Because she raises this argument for the first time on appeal, and no other exception applies, we review for plain error.  *See Kaass Law v. Wells Fargo Bank, N.A.*,

---

[10] Carmen now argues that while she never "consented" to Z.F.M.Z.'s "relocation" to the United States, it is more relevant that she never "objected" to Z.F.M.Z.'s "travel" to the United States.  However, Carmen cites no evidence that she affirmatively consented to such travel, so we find it unnecessary to resolve whether the initial purpose of the removal was temporary travel.

799 F.3d 1290, 1293 (9th Cir. 2015).**[11]**    Carmen cites language in the Jalisco court's August 30 order directing personal notice to Bertha "that [Bertha] may not leave the territory of this court . . . or the country, accompanied by [Z.F.M.Z.], without leaving a duly authorized representative to take part in this trial."  Carmen contends that this language demonstrates that the Jalisco court did not consider the removal that had then taken place to have been wrongful, nor did it consider further retention to be wrongful so long as Bertha appointed a representative to appear at trial. Whatever may be the merits of Carmen's interpretation looking at this (translated) sentence in isolation, it is inconsistent with the remainder of the August 30 order,**[12]** and it is inconsistent with all of the Jalisco court's subsequent orders and writings that we have in the record.  Accordingly, we find no plain error in the district court's conclusion that the August 30 order expressly objected to Bertha leaving Mexico with Z.F.M.Z.

Accepting those factual findings made by the district court which we have not found to be clearly erroneous, and

---

**[11]** Review of an issue for the first time on appeal is permitted where "plain error has occurred and injustice might otherwise result." *Kaass*, 799 F.3d at 1293 (quoting *United States v. Echavarria-Escobar*, 270 F.3d 1265, 1268 (9th Cir. 2001)).  Given the potentially dispositive nature of this argument on the fate of a child, we conclude that "injustice might otherwise result" if the district court plainly erred in its interpretation of the Jalisco court's August 30 order.

**[12]** For example, the August 30 order also states, "this last part is warned, to the effect that [Bertha] must appear [at the September 8 hearing] along with [Z.F.M.Z.], so this court may take to consideration the opinion of [Z.F.M.Z.]"; and, "[f]inally, as you solicited, due to what you express, that [Bertha] has left the country with [Z.F.M.Z.], it is decree as a preventive measure to guaranty the protection and interests of the minor, the bond of the defendant [Bertha]."

reviewing *de novo* the application of the Convention to those facts, *see In re B. Del. C.S.B.*, 559 F.3d at 1008, we conclude that Bertha wrongfully removed Z.F.M.Z. from Mexico on August 25, 2017.

## II.

Carmen's petition was filed with the district court on September 7, 2018.  Her petition was therefore filed more than one year after "the date of the wrongful removal or retention."  Hague Conv. Art. 12; 22 U.S.C. § 9003(f)(3).  Accordingly, the district court had discretion to decline to order the return of Z.F.M.Z. to Mexico if Bertha proved by a preponderance of the evidence that Z.F.M.Z. is now "settled" in Las Vegas.  Hague Conv. Art. 12; 22 U.S.C. § 9003(e)(2)(B); *In re B. Del C.S.B.*, 559 F.3d at 1009.  Carmen does not appeal the district court's findings that Z.F.M.Z. is "settled," nor does Carmen argue that the district court abused its discretion in declining to order return.  Thus, we hold that the district court's decision was proper.

## CONCLUSION

Because Carmen's petition was not filed within one year of the date of wrongful removal, and because Z.F.M.Z. is now settled in her new environment, we affirm the district court's denial of Carmen's petition for the return of Z.F.M.Z. to Mexico pending custody proceedings.

**AFFIRMED.**