Filed 4/23/26  Soto v. Kim CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ERIK ALMAZAN SOTO,<br><br>Appellant,<br><br>v.<br><br>ANDREA GUYLENNE MORALES KIM,<br><br>Respondent. | F088789<br><br>(Super. Ct. No. 24CEFL03079)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Jennifer L. Hamilton, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)

Gilbert Zavala for Appellant.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall and Adrian Martinez for Respondent.

-ooOoo-

Appellant Erik Almazan Soto (father) filed this appeal after the trial court denied his petition under the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention) (22 U.S.C. § 9001 et seq.) to immediately return his two minor children to Mexico. The trial court found respondent Andrea Gaylene Morales Kim (mother) had adequately proven two affirmative defenses to the petition. Father challenges the trial court's ruling. For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and mother married in 2010. They eventually had two children, a daughter born in 2014 and a son born in 2016 (the children). Mother initially filed for divorce in Merida, Yucatan, Mexico in 2020. Later, in October 2022, father filed his own divorce petition, also in Merida. The divorce proceedings were finalized in July 2023, and the parties are now divorced.

As part of the divorce proceedings, mother was granted temporary custody of the children. Later, father was granted supervised visitation that should have occurred in Mexico between April and July 2023. Mother did not bring the children to these visits, however, and in July 2023, custody was granted to father. Mother challenged this order, and it was allegedly stayed at the time of the hearing in this case.

Father claims that around this time, he learned that mother had moved with the children to the United States. He admitted he had not seen the children since he attended an event for his daughter in Cancun in 2022 and said mother had removed the children from school in Merida as of November 2022. Father stated he only learned of mother's move when the family court in Mexico informed him in July 2023. Father denied granting permission to move the children out of Mexico.

Father further claimed that after the custody change, mother falsely accused him of domestic violence in Mexico and obtained the equivalent of a protective order. Father alleged the protective order was dropped when mother failed to appear at the relevant

2.

hearings. During these proceedings, father claims that mother represented she was still in Mexico despite the fact she had moved to the United States.

Mother admitted she left Mexico in 2022 without telling father and justified the act by saying father had not been in contact with the family and had not seen the children in over a year. Mother asserted that father abandoned the family in 2020 and prior to that time, he was very strict with the children. Mother claimed father struck their daughter with a belt when she was four or five years old and frequently yelled at her; their daughter began attending therapy in 2020 over father's objection. Mother stated father mistreated their son less frequently but did recount a time when he put their son in a dumpster against his will as a punishment, causing him to cry. The son also began receiving therapy in 2020. The children receive remote therapy sessions with a therapist in Mexico. Mother has not looked for a local therapist.

Mother testified that father was physically abusive with her at least two times prior to 2019, both before the children were born, one of which involved a claimed sexual assault. Mother also claimed father was verbally abusive, calling her names and degrading her looks, more than 50 times between when they were married and 2019.

Mother testified that the abuse increased in 2020, stating she was physically abused several times that year. Mother claimed father pointed a gun at her head after finding out she was having an affair. She claimed this incident occurred while the children were present but asleep and stated they did not witness the incident. After that first incident, mother alleged father pulled a gun on her multiple times and would either use that act to force mother to have sex with him or remind her during sex that a gun was under the pillow. Mother told her therapist of these acts as early as April 2020 and received counseling for them.

Mother claimed she moved to Fresno for a business opportunity. When she arrived, she enrolled the children in school and in various sporting activities, including private gymnastics and public-school sports programs. The daughter won several awards

3.

at school and ran for student council, while the son was placed on honor roll. The children have only attended one school since coming to the United States. The family attends church, mother runs her own business, and mother has financial support from her family. Mother also remarried and has another child with her new husband. The family lives rent free in a house owned by mother's father.

Mother stated that she had seen a marked improvement in her children's behavior since they began receiving therapy in Mexico and later moved to the United States. The daughter is more confident, has better self-esteem, and has changed from quiet to talking a lot and being very social. The daughter's gymnastic coach noted she has gone from shy and timid, not speaking much English, to very engaged and outgoing, having no trouble communicating with coaches and teammates. The daughter participated in many gymnastic competitions, including six to seven in the year before the hearing. The son has become more accurate in his communication, less aggressive, and very confident. The son's football coach initially had trouble communicating with the son because he had trouble with English, but he is now one of the team's best players. The children have made strong friendships with other children in the United States and are now fluent in English. The children's therapist testified they could suffer harm if removed to Mexico, in part because they feel safe and protected where they are and have adapted to school and their activities.

Father denied mother's allegations of sexual and physical abuse. He also denied owning any firearms but did admit to visiting a shooting range in Mexico and one in the United States a few times. Father generally attempted to show mother lied to the Mexican courts in the past about her address to avoid attending hearings. He also provided expert testimony, based on his interviews and psychological testing, that concluded he was neither a violent nor sexually aggressive person.

The trial court's evidentiary hearing spanned four days, and the court later accepted posthearing briefing and held argument on the petition. The court ultimately

ruled that the children's habitual residence prior to November 2022 was in Mexico. At that point, mother moved the children to Fresno with the intent to leave Mexico permanently. Father did not consent to this move, and therefore the court found the date of the removal of the children was November 2022. At that time, the court noted that father had visitation rights and concluded both that the removal was wrongful and that father would have exercised his visitation rights if not for mother moving the children to the United States.

Based on these findings, the trial court determined that appellant's petition under the Hague Convention, filed on June 17, 2024, was submitted more than one year after the date of removal. Crediting testimony from mother and others, and reciting it in detail, the trial court then found the children were well settled in Fresno. The trial court also extensively detailed the allegations of abuse made by mother, father's denials of the same, and the opinion of the children's therapists regarding the harm returning them could cause. The court found the evidence of abuse credible and corroborated. Based on these findings, the court also determined that there was a grave risk that returning the children to Mexico would expose them to physical and psychological harm or otherwise place them in an intolerable situation. Accordingly, the court dismissed father's petition.

This appeal timely followed.

**DISCUSSION**

Father appeals from the trial court's determination that two defenses to repatriation exist and its decision not to order the children returned to Mexico. There is no challenge raised to the determination that the children's habitual residence prior to wrongful removal or retention was in Mexico. Accordingly, this court focuses on the defenses raised. We note that the core issue on appeal is where the children will reside while future custody determinations are made. This appeal does not determine how future custody disputes should be resolved.

5.

***Standard of Review and Applicable Law***

"The Hague Convention provides a mechanism for the prompt return of a child taken by one parent across international borders in violation of a right of custody." (*Maurizio R. v. L.C.* (2011) 201 Cal.App.4th 616, 632–633 (*Maurizio R.*).) The Hague "Convention's 'central operating feature' is the return of the child" so that "venue for the ultimate custody determination [is] in the child's country of habitual residence rather than the country to which the child is abducted." (*Lozano v. Montoya Alvarez* (2014) 572 U.S. 1, 5 (*Lozano*).) "A court that receives a petition under the Hague Convention may not resolve the question of who, as between the parents, is best suited to have custody of the child." (*Cuellar v. Joyce* (9th Cir. 2010) 596 F.3d 505, 508.)

Thus, when a petitioner demonstrates by a preponderance of the evidence that a child has been wrongly removed or retained, the Hague Convention "requires repatriation of the abducted child to its country of habitual residence in all but a few exceptional circumstances." (*Maurizio R., supra*, 201 Cal.App.4th at p. 633.) These defenses to repatriation "must be narrowly interpreted 'lest they swallow the rule of return.' " (*Ibid.*; see *Friedrich v. Friedrich* (6th Cir. 1996) 78 F.3d 1060, 1067 [identifying the four primary defenses to the repatriation requirement].)

Two defenses are relevant to this case. First, under article 12[1] of the Hague Convention, if "the abducting parent can show that the petition for return was filed more than a year after the wrongful removal or retention occurred, and 'that the child is now settled in its new environment,' the abducting parent can overcome the presumption in favor of return." (*In re B. Del C.S.B.* (9th Cir. 2009) 559 F.3d 999, 1002.) The abducting parent must prove this defense by a preponderance of the evidence. (22 U.S.C. § 9003(e)(2)(B); *Friedrich v. Friedrich, supra*, 78 F.3d at p. 1067.) Second, under article 13(b), a child need not be returned if " '[t]here is a grave risk that … return would

---

[1]     Undesignated references to articles are to the Hague Convention.

6.

expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.' " (*Golan v. Saada* (2022) 596 U.S. 666, 670–671.) This defense is narrowly drawn and must be proven by clear and convincing evidence. (*Cuellar v. Joyce, supra*, 596 F.3d at pp. 508–509; 22 U.S.C. § 9003(e)(2)(A).)

Our standard of review depends upon the nature of the issue considered. We review the trial court's legal conclusions de novo and decisions left to the court's judgment for abuse of discretion. (*da Costa v. de Lima* (1st Cir. 2024) 94 F.4th 174, 180–181.) Under Federal law principles,[2] findings of fact, including credibility determinations, must not be set aside unless clearly erroneous, meaning a definite and firm conviction that a mistake has been committed. (*da Costa v. de Lima*, at p. 181.) Mixed questions of law and fact are determined based on whether resolving the dispute entails primarily legal or factual work. (*Monasky v. Taglieri* (2020) 589 U.S. 68, 83–84.)

The "now settled" defense of article 12 is such a mixed question of law and fact. (*da Costa v. de Lima, supra*, 94 F.4th at p. 181.) Once the trial court correctly identifies the applicable standards, the final question whether the child has become settled in their new environment is factual, and "our review of that question is for clear error." (*Ibid.*;

---

[2]    Some California courts apply the federal " 'clear error' " standard while others apply California's " 'substantial evidence' " rule. (*Maurizio R., supra*, 201 Cal.App.4th at pp. 633–634; see *Escobar v. Flores* (2010) 183 Cal.App.4th 737, 748.) The difference likely arises because the Hague Convention grants original jurisdiction in both state and federal courts while, in some circumstances, mandating that state principles for interstate custody disputes apply. (22 U.S.C. § 9003(b), (c); see *Wipranik v. Superior Court* (1998) 63 Cal.App.4th 315, 321 [noting California notice requirements include the opportunity to be heard in interstate child custody proceedings].) Generally, though, cases should be decided "in accordance with the [Hague] Convention," which is a federally adopted treaty. (22 U.S.C. § 9003(d).)

Although phrased differently, the two standards are substantially similar in that both require appellate deference to the trial court's factual findings, particularly where the trial court's findings rest on its assessment of the credibility of witnesses. (*Escobar v. Flores, supra*, 183 Cal.App.4th at p. 748 & fn. 6.) We need not resolve this dispute, however, as our resolution in this case would be the same under either standard. (*Maurizio R., supra*, 201 Cal.App.4th at p. 633.)

but see *In re B. Del C.S.B., supra*, 559 F.3d at p. 1008 [holding that ultimate conclusion whether child is now settled in the United States is reviewed de novo].)

### The Trial Court Correctly Determined the Date of Wrongful Removal or Retention

To invoke the "now settled" defense, mother was required to demonstrate that father failed to file his petition within one year from the date mother wrongly removed or retained the children. Across multiple arguments, father challenges the trial court's determination that the relevant date for when the one-year filing requirement began to run was when mother moved to the United States in November 2022. Father argues that principles of judicial estoppel preclude mother from arguing for any wrongful removal or retention date prior to July 2023 because mother submitted documents to the Mexican courts that implied she was residing in Mexico, causing father not to learn of her move to the United States until July 2023. He also argues these actions demonstrate concealment sufficient to warrant utilizing a later date than when she moved to the United States. Upon review, we find no error.

In *Lozano*, the United States Supreme Court discussed how to determine whether legal customs from the United States apply to Hague Convention petitions and whether the one-year filing deadline is subject to equitable tolling. Despite equitable tolling being "a long-established feature of American jurisprudence," the United States Supreme Court noted it would be "particularly inappropriate to deploy this background principle of American law automatically when interpreting a treaty," in part because such treaties must be read in a manner consistent with the shared expectations of the contracting parties. (*Lozano, supra*, 572 U.S. at pp. 10, 12.) Moreover, the court noted that even if applicable generally, such tolling only applied to statutes of limitation, which the one-year filing requirement was not. (*Id.* at pp. 13–14.) Ultimately the court found that "[a]rticle 12 explicitly provides that the 1-year period commences on 'the date of the wrongful removal or retention,' and makes no provision for an extension of that period." (*Id.* at pp. 15–16.) Even intentional concealment would not delay the start date of the

8.

one-year filing period as any requirement that the period start upon discovery of the removal or retention would be inconsistent with the terms of the treaty. (*Id.* at p. 16.) Rather, facts supporting tolling and concealment could be considered in the settled analysis. (*Id.* at p. 17.)

In this case, father invokes facts regarding the concealment of mother's address to support an improper retention date later than the improper removal date found by the court. Father also attempts to apply the concept of judicial estoppel to support this claim. Such arguments fail.

As set forth in *Lozano*, facts regarding concealment of mother's address, and thereby concealment of the children, cannot extend the one-year period applicable to filing a petition but can be considered by the trial court in any later analysis considering whether a child is settled in their current location. (See *Lozano, supra*, 572 U.S. at p. 17.) The relevant question for determining the date triggering the one-year period is when the children were first improperly removed or retained. (See *Castro v. Renteria* (9th Cir. 2020) 971 F.3d 882, 887–890 [discussing legal framework and determining that improper removal occurring prior to improper retention was triggering date for petition].) In this case, the court found that date was in November 2022, when mother took the children to the United States with the intent to permanently remain there, without father's permission, and contrary to the custody rights father was actively utilizing. This date is supported by substantial evidence, and father's factual claims that this date should be later because mother concealed her address are irrelevant under *Lozano*.

With respect to utilizing judicial estoppel to preclude using the date of wrongful removal, father provides no legal authority demonstrating such a concept is within the shared expectations of the contracting parties and no basis within the treaty to apply such a concept aside from the same expediency concerns rejected in *Lozano*. We see no reason to treat judicial estoppel differently from equitable tolling in this context and

9.

therefore find it cannot delay the one-year filing period for a Hague Convention petition.[3]
We take no position on whether judicial estoppel could apply to other aspects of the
analysis required by the treaty. (See *Whiting v. Krassner* (3rd Cir. 2004) 391 F.3d 540,
544 [noting both that judicial estoppel is a discretionary doctrine and that there is a
general exception to judicial estoppel when it comes to jurisdictional facts or positions].)

### *The Court's "Now Settled" Finding Is Not Clearly Erroneous*

Father also challenges whether the minor children are now settled in Fresno.
Father contends that "despite all of the evidence presented," the "children have not fully
acclimatized to Fresno" and that mother "has not met her burden to support the finding of
an [a]rticle 12" defense. Father focuses mainly on the concealment evidence to support
these assertions. We do not agree.

The question whether a child is settled asks "whether the child has 'significant
connections to the new country.' " (*In re B. Del C.S.B., supra*, 559 F.3d at p. 1009.)
Factors include: "(1) the child's age; (2) the stability and duration of the child's
residence in the new environment; (3) whether the child attends school or day care
consistently; (4) whether the child has friends and relatives in the new area; (5) the
child's participation in community or extracurricular school activities, such as team
sports, youth groups, or school clubs; and (6) the respondent's employment and financial
stability." (*Ibid.*) Courts may also consider immigration status if there is a concrete
threat of deportation as well as the extent to which concealing the children has affected
their ability to settle in their new environment. (*Ibid.*; see *Lozano, supra*, 572 U.S. at
p. 17 [collecting cases showing frequent moves as well as purposefully keeping children

---

[3] Even if we were to find judicial estoppel applicable, father relies only on assertions made
to the courts in Mexico that mother could be contacted at a Mexican address to support
application of the doctrine. The record does not show mother prevailing before the Mexican
courts on any issues involving her allegedly inconsistent representations. Nor does father
demonstrate the trial court's refusal to apply the doctrine, even if each element was satisfied, was
an abuse of discretion. (See *Lee v. West Kern Water Dist.* (2016) 5 Cal.App.5th 606, 630
[discussing elements and noting application of doctrine is discretionary].)

10.

out of community activities, sports, church, and schooling affects the settled analysis].) "Although all of these factors, when applicable, may be considered in the 'settled' analysis, ordinarily the most important is the length and stability of the child's residence in the new environment." (*In re B. Del C.S.B.*, at p. 1009.)

The substantial evidence presented regarding the children's lives in Fresno strongly supports the trial court's ruling and does not support a definite and firm conviction that a mistake has been committed. As detailed above, at the time the petition was filed, the children had lived in Fresno for approximately 18 months and were roughly 8 and 10 years old. Since moving to Fresno, they attended school regularly, had excellent grades, and engaged in many school activities. They were also actively engaged in community activities, built a network of friends, and attended a local church. Described as having poor English and being withdrawn when they arrived, the children were described as outgoing, happy, and now fluent in English. Mother, too, developed a stable and secure home. She remarried, had another child, and started a business that she claimed was successfully bringing in enough money to support the family in their current circumstances. The trial court could readily rely on the extensive testimony on these points to support its decision.

There was undoubtedly evidence weighing against a well-settled finding. Mother did not disclose her address to father during the period she was in the United States, her and the children's immigration status was unresolved, and she admitted to relying on substantial support from her father, particularly with respect to housing. But none of this evidence compels a finding contrary to the trial court's determination that the children had now settled in the United States, and this court sees no error in the trial court's analysis. Ultimately, the trial court heard relevant and competent evidence regarding whether the children had settled in Fresno and made the supported factual determination that the article 12 defense had been proven by a preponderance of the evidence.

### *The Trial Court Could Hold an Evidentiary Hearing and Deny Repatriation*

Finally, under a heading titled "The court erred when it determined that an evidentiary hearing was necessary under Article 18 of the Hague Convention" (boldface, underlining, & some capitalization omitted), father presents what appears to be two arguments relevant to this dispute.  First, father contends the trial court had the authority to rule on father's petition without an evidentiary hearing.  As the trial court did not take this course of action, implicit in this claim is an assertion that choosing to hold the evidentiary hearing was improper.  Second, father argues that "[a]rticle 12 places no limit on [a]rticle 18's grant of discretionary power to order return" and contends the trial court should have exercised its discretion to order repatriation regardless of any proven article 12 defense.

Both arguments suffer from the same flaw.  While father has correctly outlined the trial court's discretion in both matters, he has failed to identify any law or facts which would compel the trial court to only exercise its discretion in father's favor.  Accordingly, regardless of the scope of the court's discretion, father has failed to demonstrate reversible error.

With respect to the trial court's authority to resolve a petition with or without an evidentiary hearing, father is correct that the court has discretion to rule on certain petitions without an evidentiary hearing.  (*Noergaard v. Noergaard* (2015) 244 Cal.App.4th 76, 93.)  However, father points to no case law mandating that no evidentiary hearing be held.  Rather, the standard view is that due process concerns require that mother have an opportunity to be heard.  (*Id.* at pp. 95, 98.)  Indeed, the case law reflects the routine use of evidentiary hearings among courts taking up Hague Convention petitions.  (See, e.g., *Matter of Luisa JJ. v. Joseph II* (N.Y.App.Div. 2023) 219 A.D.3d 1628, 1632–1633 [196 N.Y.S.3d 581, 588] [collecting cases]; see also *Monasky v. Taglieri, supra*, 589 U.S. at p. 74 [noting four-day bench trial on habitual

residence determination].) In this case, clear issues of fact were raised by mother, and the trial court did not err in choosing to hold an evidentiary hearing to resolve those disputes.

Similarly, with respect to the trial court's authority to order repatriation despite an article 12 defense, the Hague Convention is clear that such authority is discretionarily vested in the trial court. (See *Fernandez v. Bailey* (11th Cir. 2018) 909 F.3d 353, 361–363 [collecting cases and holding the same to be the correct interpretation of article 18].) Father acknowledges this discretion but contends the trial court should be compelled to utilize it despite its finding of a valid article 12 defense in light "of the active concealment" by mother. Father points to no law supporting his claim that the trial court must exercise its discretion to return the children despite a valid article 12 defense, let alone that it must do so in a case such as this. Further, as detailed and discussed above, this court found no error in the trial court's determination that a valid article 12 defense exists. We note that the trial court's analysis heard and then presumedly considered and weighed the evidence of concealment father now focusses upon to contest the court's order. (See *McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1103 ["We presume the trial court knew and properly applied the law absent evidence to the contrary."].) We thus find no basis to conclude the court abused its discretion when it denied father's petition.[4]

---

[4] Having determined that the "well-settled" exception applies and the trial court did not abuse its discretion in refusing to order repatriation, we do not reach the trial court's separate and independent finding that the grave risk exception also applies.

## DISPOSITION

The order is affirmed.  The parties shall each bear their own costs.

HILL, P. J.

WE CONCUR:

DETJEN, J.

PEÑA, J.

14.